JOHN B. and MARCELLA KIRBY v. DEPART-
MENT OF REVENUE; and F. W. and RUTH
ELDER v. DEPARTMENT OF REVENUE

David C. Silven, Banta, Silven & Young, Baker,
Oregon, represented plaintiffs.

Walter J. Apley, Assistant Attorney General, Sa-
lem, Oregon, represented defendant.

Decision for defendant rendered December 1, 1970.

LOREN D. HICKS, Judge pro tempore.

These two cases come before the court on the same
basic facts, and the parties stipulated that the cases

be consolidated for trial and decision. The pertinent facts are not in dispute.

Mr. Kirby and Mr. Elder were equal partners in the "Frying Pan Ranch," located in Malheur County, Oregon. The partners entered into an agreement with United Farms, a corporation, to sell the ranch to United Farms at a price of $375,000. On January 25, 1965, plaintiffs deeded the ranch real property to Norman F. Bundgard, Robert J. Bundgard, Joyce L. Conrow and Sally Bundgard who were the stockholders of United Farms. At that time the plaintiffs received $50,000 on the purchase price and accepted the promissory note and mortgage of the grantees as security for the balance. Plaintiffs received $30,000 on the mortgage on July 28, 1965, and the balance of $295,000 on August 24, 1965.

In May 1965, the Oregon Legislative Assembly enacted Or L 1965, ch 410, which provided that for sales or exchanges occurring on or after July 1, 1965, there would be excluded from gross income one-half of any income item which was taxable as a long-term capital gain under the Federal Revenue Code. One new effect of this law was to grant capital gains treatment to a sale of a ranch used in a trade or business.

Plaintiffs contend that under this statute they were entitled to report the two installment payments they received after July 1, 1965, as capital gains, taking the benefit of the 50 percent exclusion. The defendant denied the plaintiffs' contention and issued orders of deficiency. Plaintiffs appealed.

The act in question, which was codified as ORS 316.405, provided in part:

"Section 2. (1) For sales or exchanges occurring on or after July 1, 1965, subject to the limita-

tions otherwise provided by this 1965 Act, there shall be excluded from gross income one-half of any income item taxable to the taxpayer under this chapter which is taxable to the taxpayer as a long-term capital gain under the Federal Internal Revenue Code provisions as of January 1, 1965.

"* * * * * *

"Section 9. This 1965 Act shall apply to sales or exchanges occurring on or after July 1, 1965."

It is clear from the evidence that the sale in question occurred on January 25, 1965, that two payments were made after July 1, 1965, and that it was an installment sale. It is also clear that the sale was not entitled to installment sale reporting because the entire purchase price was paid in one tax year.

The defendant argues that the fact the sale occurred prior to July 1, 1965, is decisive of the issue. The plaintiffs contend, however, that the time of receipt of each payment is controlling as to the tax treatment of that payment. Plaintiffs cite statements of the State Tax Commission to the effect that as to installment sales the determinative law is that in effect at the time of receipt of payment and not the law at the time of sale.

■ This interpretation was publicly stated in defendant's Legal Department Abstracts, Vol XVII, No. 1, dated July 30, 1965, and in Vol XX, No. 5, dated August 2, 1968, and also in the instructions on Form 40-D (tax return schedule for capital gains and losses) for 1965. It is apparent from reading each of these statements and instructions as a whole that the defendant was discussing sales that qualified for and were being reported on the installment basis. Also, it must be remembered that the statements were merely

advisory opinions of the Law Section of the Tax Commission, and did not have the force of law or regulation nor the standing of an official published opinion of the Attorney General. Such statements and instructions are not binding upon either the tax authorities or the taxpayer.

The case mentioned by the defendant in the abstracts and relied on by the plaintiffs in this proceeding is *Livingston v. Commission*, 1 OTR 461 (1964). That case involved a 1959 sale of shares of stock in which the sales price was to be paid in installments over a period of six years. The taxpayers elected to report on the installment basis, and in their 1960 return they treated installments received that year as capital gains.

The Tax Commission disallowed the claim for special capital gains treatment for 1960 on the ground that the new law applied only to sales occurring in "tax years beginning after December 31, 1959."[①] On appeal, the tax court held for the taxpayer, invoking the federal rule that the capital gains law to be applied to an installment sale is the law in effect during the year the installment is received. Although the court's language was that the "time of receipt is applicable" the court was not speaking about the date of receipt, but rather about the tax year of receipt. In its opinion the court stated:

> "The rationale of the federal rule is clear: a taxpayer should have to use the law which applies to the year in which the gain is recognized in order to compute how much tax he owes. Any other rule would force a taxpayer to search prior law every time an installment was paid in a later year and would cause part of his income to be returned under

[①] Or L 1959, ch 591, § 21.

prior law and another portion under current law, a situation which would make compliance with, and administration of, the tax laws extremely more burdensome than they have a right to be. * * *"

The *Livingston* case is inapplicable to the situation of plaintiffs here. Plaintiffs had no election to make in reporting the sale and no gain to be deferred to a subsequent year. It is important also to note that the statute before the court in *Livingston* was to be applied to "tax years beginning after December 31, 1959." The application of the statute now before the court is not dependent upon tax years but rather upon whether or not the sale occurred on or after a specific date.

The special rules regarding installment reporting for postponement of taxation are an exception to the general rule that gain is taxed in the year of sale. The exception was adopted to enable the taxpayer to pay his taxes out of cash income. In 2 Mertens, Law of Federal Income Taxation, § 15.01, 2, the following explanation is given:

"It was early seen that installment sales should for income tax purposes be separately treated because in an installment sale only a small part of the price is ordinarily paid at the time of sale and the seller cannot then afford to pay a tax on the total profit as the larger part lies in the buyer's yet unrealized promise to pay, sometimes secured by a lien on the purchased property.

"The purpose of the installment method of reporting is to permit the spreading of the tax over the period of the payments * * * so that the tax could be paid from the proceeds collected rather than be advanced by the taxpayer."

See also *Snell v. Commissioner*, 97 F2d 891 (5th Cir, 1938), 21 AFTR 608, 38-2 USTC ¶ 9417; *Golden*

*v. Commissioner,* 47 BTA 94 (1942). The rationale for the exception does not apply to the situation of plaintiffs.

Plaintiffs cite *U.S. v. Eversman,* 133 F2d 261 (6th Cir, 1943), 30 AFTR 761, 43-1 USTC ¶ 9284, as basis for their contention that rules applicable to installment sales apply to any installment sale regardless of whether it is or could be reported as such on tax returns.

*Eversman* concerned a sale of a building in New York City to a buyer who, after paying $40,000 on the price, validly elected in the year of sale to cancel the contract and return the property in complete satisfaction of the remaining contract debt. The Court of Appeals found that at the time the property was returned its fair market value had declined to a point that such value plus the cash paid during the year was less than the taxpayer's basis in the property. Therefore, the seller realized no gain and owed no tax on the cash received.

The decision was based upon the provisions of § 44(d) of the Revenue Act of 1928, ch 852, 45 Stat 791. The government contended in the case that § 44(d) applied only to an installment seller who had elected to report income from an installment sale extending over more than one taxable year, which Eversman had not done since the contract was made and cancelled all within the same tax year. The court rejected the government's position because § 44(d) clearly provided that if an installment obligation was satisfied at other than its face value, the taxpayer was entitled to compute profit or loss under the section. The court held that any installment sale was within the statute, not just those that met the require-

ments for reporting gain over a period of years. The decision turned on the particular wording of that statute and does not express a general rule that installment sales made and completed in one tax year are to receive the same special treatment given long term installment sales.

Plaintiffs set forth a second theory which they believe brings them within the 1965 Act. They claim that because of certain omissions and defects the purchase money mortgage they accepted in January 1965, had no market value and thus they realized no profit until after July 1, 1965. As authority for this position, plaintiffs cite *Burnet v. Logan*, 283 US 404, 51 S Ct 550, 75 L Ed 1143 (1931), and *Bibb v. Commission*, 3 OTR 60 (1967). The facts and issues of those cases are not similar to the situation of plaintiffs and the decisions are of no assistance in deciding this case. The two cases and plaintiffs' arguments are applicable (1) to completed exchanges of property where at the close of the tax year in question there is no ascertainable fair market value of the property received by the seller upon which to compute a profit, and (2) to installment sales where the obligation is finally satisfied at less than face value. In addition to *Bibb* and *Logan, supra,* see *Doric Apartment Co. v. Commissioner*, 32 BTA 1187 (1935), *Brown v. Commissioner*, 26 BTA 781 (1932), *Munkers v. Commission*, 3 OTR 95 (1967), and *U.S. v. Eversman, supra.* Also see a comprehensive discussion of *Burnet v. Logan, supra,* in 1 Mertens, Law of Federal Income Taxation, § 5.08, 22-29.

■ When plaintiffs accepted the notes and purchase money mortgage in January, 1965, legal problems existed which may have caused the note to have no

value or a lesser value than its face. Almost all mortgages and sales contracts are marketable only at a discount, but nevertheless the taxable profit is based upon the agreed price. By the time plaintiffs' 1965 tax year ended all of the cash called for by the January sale had been received by plaintiffs. No question remained about the value of what was received.

■ The clear wording of the statute here in question limits its application to "sales or exchanges occurring on or after July 1, 1965," and makes no reference to time of payment during the year or to the year of taxation. There is no rule of law, no regulation, no other statute and no practical reason that requires any special application of the statute so far as the sale here in question is concerned.

Plaintiffs' sale of their ranch on January 25, 1965, did not qualify for capital gain treatment under Or L 1965, ch 410. The order of the Department of Revenue is sustained.